## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TAMMY A. MORRISON,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-722
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the

Commissioner's response in opposition (Doc. 18), and plaintiff's reply memorandum (Doc. 19).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI in April 2012, alleging disability

since January 10, 2010, due to bipolar disorder, anxiety, depression, suicide attempts, high blood

pressure, sleeping problems, right rotator cuff problems, and migraine headaches. These

applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested

and was granted a *de novo* hearing before administrative law judge (ALJ) Elizabeth A. Motta.

Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On May 30,

2013, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request

for review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).   The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2016.

2. The [plaintiff] has not engaged in substantial gainful activity since January 10, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: history of right rotator cuff tear and surgical repair; headaches; bipolar disorder; and alcohol dependence in partial remission (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) subject to the following limitations: lift up to 50 pounds occasionally and 25 pounds frequently, no climbing ropes, ladders or scaffolds; no exposure to hazards such as moving or dangerous machinery or working at unprotected heights; overhead reaching on the right dominant side limited to occasionally; simple, repetitive tasks; low stress work with no strict production quotas or fast pace and only routine work with few changes in the work setting; no contact with the public and only occasional contact with coworkers and supervisors (including no over-the-shoulder supervision or teamwork).

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

---

[1]Plaintiff's past relevant work was as a rewinder operator. (Tr. 25, 261).

3

7. The [plaintiff] was born [in] . . . 1963 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because there are jobs at step five regardless of whether she has transferable skills (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 10, 2010, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 16-27).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. .

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 25,000 medium, unskilled, jobs in the regional economy, such as a store laborer, hand packager, and hospital cleaner; 30,000 light, unskilled, jobs in the regional economy, such as a warehouse checker, mail clerk, and copy machine operator; and 5,500 sedentary, unskilled, jobs in the regional economy, such as a weight tester, charge account clerk, and lens inserter. (Tr. 26, 71-72).

4

. ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that the ALJ violated multiple regulations and Social Security Agency rulings in her insufficient consideration of plaintiff's mental health impairments. Plaintiff asserts the following errors: (1) the ALJ mischaracterized evidence of record regarding whether she experiences episodes of decompensation as a result of her mental impairments; (2) the ALJ improperly analyzed plaintiff's alcohol abuse; and (3) the ALJ erred in weighing the opinion evidence of record. (Doc. 11). Plaintiff's errors are addressed in turn.

    1. <u>Whether the ALJ committed error in mischaracterizing evidence related to plaintiff's mental impairments</u>.

For her first assignment of error, plaintiff asserts the ALJ mischaracterized the medical evidence of record. Plaintiff maintains that because both state agency reviewing psychologists and plaintiff's treating psychiatrist opined that plaintiff had experienced decompensation episodes,

5

the ALJ erred by concluding that plaintiff had not experienced any. (Doc. 11 at 7, citing Tr. 17, 86, 122, 745-46). Plaintiff contends that because the ALJ erroneously concluded that plaintiff had no episodes of decompensation, the ALJ likewise erred in assessing whether plaintiff meets or equals Listing 12.04 and in determining plaintiff's RFC. (Doc. 11 at 7-9). Plaintiff seeks remand of the ALJ's decision on this basis.

The Commissioner responds that remand is unnecessary because the ALJ properly concluded that plaintiff does not meet or medically equal Listing 12.04 because the evidence does not establish that plaintiff experienced episodes of decompensation *of an extended duration*. The Commissioner concedes that the ALJ was incorrect in stating that "the record does not indicate that [plaintiff] has experienced any episodes of decompensation, which have been of extended duration." (Doc. 18 at 2, citing Tr. 19.) However, the Commissioner maintains that the ALJ clarified this statement in the next sentence of her decision when she found that plaintiff did not satisfy the criteria of Listing 12.04 because her mental impairments did not cause "'repeated' episodes of decompensation, each of extended duration. . . ." (Doc. 18 at 2-3, citing Tr. 19). The Commissioner argues that any error committed by the ALJ was harmless. The Social Security regulations define "repeated" episodes of decompensation as three episodes within a single year, or an average of one episode every four months, each lasting for at least two weeks. Because the state agency reviewing psychologists found that plaintiff experienced only one or two episodes of decompensation, plaintiff failed to meet Listing 12.04's criteria of "repeated" episodes. (Doc. 18 at 3, citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(4)). While the Commissioner acknowledges that plaintiff's treating psychiatrist opined that plaintiff had repeated episodes of decompensation, she appears to argue that this medical opinion was properly dismissed because it contained internal inconsistencies. (Doc. 18 at 3-4, citing Tr. 745-46).

6

For the reasons that follow, the undersigned finds that the ALJ erred in characterizing the medical evidence of record in violation of the Social Security regulations. A remand is necessary because the ALJ's error impacts the Step Three and Step Four determinations of the sequential evaluation process.

The following is a summary of the pertinent medical evidence of record. On January 6, 2010, plaintiff presented to the emergency room at Atrium Medical on referral from her therapist due to increased stressors and symptomology related to bipolar disorder and alcohol abuse and stated that "she didn't care if she lived or died." (Tr. 451-52). Plaintiff reported suicidal ideation and a desire to hurt others, but she dismissed the latter as a result of being intoxicated. (Tr. 454). Plaintiff reported experiencing blackout episodes related to alcohol abuse and related that she has been charged with two DUIs (driving under the influence) and resisting arrest based on her attempt to strike a police officer. (*Id.*). She was diagnosed with bipolar disorder, alcohol abuse, and personality disorder and assigned a Global Assessment of Functioning ("GAF") score of 41.[3] (Tr. 464). Plaintiff was discharged slightly improved and her prognosis was "quite guarded." (Tr. 451).

Plaintiff began treatment at Day-Mont West Behavioral Healthcare (Day-Mont) for alcohol recovery in March 2010; plaintiff treated at Day-Mont through at least May 2012. (Tr. 539-630). On mental status examination on March 19, 2010, plaintiff was found to be

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. The DSM-IV categorizes individuals with scores of 41 to 50 as having "serious symptoms or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). . . ." *See* DSM-IV at 34.

well-groomed, her demeanor was mistrustful, her eye contact was average, she had average activity, her speech was clear, her thought content was guarded and her thought process was logical, she had a euthymic mood and full affect, and her behavior was cooperative. (Tr. 557). The record includes progress notes from plaintiff's meetings with a Day-Mont professional from April 2010 through June 2011. (Tr. 563-76). These progress notes include little, if any, observations regarding plaintiff's mental impairments.

In August 2010, plaintiff was admitted to Kettering Medical Center following an overdose of beta blockers. Plaintiff presented with suicide ideation and alcohol intoxication. Plaintiff was treated with saline and a dopamine drip and discharged with instructions to follow up at Day-Mont and with her primary care physician within one week. (Tr. 394-409).

On September 24, 2010, plaintiff was examined by Day-Mont psychiatrist Amparo Wee, M.D. Dr. Wee found plaintiff was severely depressed with a constricted affect, well-groomed, direct, agitated, clear, without delusions, cooperative, alert, and with an oriented memory. Her judgment was average and she had the ability to abstract. Dr. Wee diagnosed plaintiff with bi-polar disorder, more recent depressed; alcohol dependence; and rule out anxiety disorder. He assigned plaintiff a GAF score of 42 and recommended individual therapy. (Tr. 603-06).

Plaintiff was again admitted to Atrium Medical Center in December 2010 for suicidal ideation. Plaintiff presented with minimal insight and poor judgment and she reported a lot of stress in her current relationship. She was diagnosed with dysthymic disorder and borderline personality disorder and assigned a GAF of 40. Plaintiff was admitted for several days with a plan to participate in a daily sessions with a hospital psychiatrist. (Tr. 425-38).

Plaintiff regularly treated with Leticia Patterson-Hicks, LSW, at Day-Mont from August 2011 through at least September 2012. (Tr. 577-603, 705-22). Throughout this treatment Ms.

8

Patterson-Hicks observed that plaintiff: was cooperative (Tr. 577, 583, 595, 599, 718); made direct

eye contact (Tr. 577, 583, 587, 595, 705, 709, 718); exhibited average activity (Tr. 577, 587, 595,

705, 709, 718); had clear speech (Tr. 577, 583, 587, 591, 595, 599, 705, 709, 713, 718); exhibited

no perception problems (Tr. 577, 580, 583, 587, 591, 595, 599, 705, 709, 713, 718); and did not

express thoughts of self-harm or harm to others (Tr. 578, 581, 584, 588, 592, 596, 600, 706, 710,

714, 719). On other occasions, plaintiff was observed as hostile (Tr. 580), depressed (Tr. 587,

705, 709), withdrawn (Tr. 713), or preoccupied (Tr. 591); with intense or avoidant eye contact (Tr.

580, 591, 599, 713) and rapid speech (Tr. 580); and exhibiting hyperactive or agitated activity (Tr.

580, 583, 591, 599, 713).

The record includes Dr. Wee's observations from various mental status examinations from

June 2012 through December 2012. (Tr. 723-40). In June 2012, Dr. Wee observed that plaintiff

was well-groomed with average demeanor and activity, cooperative behavior, and clear speech.

(Tr. 723). Her mood was depressed and her affect constricted; she was assigned a GAF score of

60. (Tr. 723, 728).

Non-examining state agency psychologist Paul Tangeman, Ph.D, reviewed plaintiff's

medical records in July 2012. Dr. Tangeman opined that plaintiff had moderate restrictions in her

activities of daily living; moderate difficulties in maintaining social functioning; moderate

difficulties in maintaining concentration, persistence, or pace; and one or two episodes of

decompensation of an extended duration. Dr. Tangeman found plaintiff could complete one to

four step tasks in a static work environment without production quotas, guidelines, or standards,

and with only superficial interactions with others. Dr. Tangeman further opined that "[plaintiff's]

drug and alcohol use negatively impact her functioning and this is supported by the [medical

evidence of record] in file.   [Mental Status Examinations] are relatively normal when she is not using.   All [suicidal] attempts stem from alcohol or drug use."   (Tr. 80-94).

Dr. Wee's August 2012 examination includes observations that plaintiff presented with a disheveled appearance, withdrawn demeanor, depressed mood, agitated activity, and constricted affect; plaintiff's GAF score was again 60.   (Tr. 729-34).   In September 2012, plaintiff presented with a disheveled appearance, agitated activity, and depressed mood, but her behavior was cooperative, affect was full, and demeanor was average.   (Tr. 735-36).   Dr. Wee again assigned plaintiff a GAF score of 60.   (Tr. 740).

On August 17, 2012, Dr. Wee completed a mental status questionnaire in which he described plaintiff's mental status as disheveled, tearful and distraught; she had good flow of conversation; and she had a sad affect.   She was anxious and not able to focus much on the topic due to crying spells.   She denied any psychotic symptoms and was oriented times 3.   Dr. Wee opined that plaintiff had fair to poor insight and judgment due to her depression.   (Tr. 638).   Dr. Wee listed plaintiff's diagnosis as bipolar disorder, most recent episode depression.   Dr. Wee opined that plaintiff had a poor ability to maintain attention, sustain concentration, persist at tasks, complete tasks in a timely manner, and adapt in a work environment.   (Tr. 639).

Dr. Wee also completed a mental functional capacity assessment on behalf of the Ohio Department of Jobs and Family Services that same day.   (Tr. 783-84).   Dr. Wee opined that plaintiff was markedly impaired in her abilities to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; complete a normal work-day and workweek without interruptions from psychologically based symptoms and perform

at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (Tr. 783). He diagnosed plaintiff with bipolar disorder and assigned a GAF score of 45. (Tr. 784).

On September 14, 2012, Dr. Wee completed another mental functioning assessment. He found plaintiff's current GAF score to be 60 and her highest over the past year to be 50.[4] (Tr. 742). Dr. Wee opined that plaintiff had moderate restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 745). He also found that plaintiff had 1-2 episodes of decompensation within the last year and was unable to function independently outside her home. (Tr. 745-46). Dr. Wee also opined she was likely to miss 4 or more days of work per month as a result of her impairments. (Tr. 746).

In October 2012, plaintiff was evaluated by consultative examining psychologist David Chiappone, Ph.D. Dr. Chiappone reported that plaintiff's hygiene and motor behavior were adequate; she was passively cooperative; her reports were vague and guarded and she seemed to be embarrassed talking about her issues; and her effort and persistence tended to wax and wane. Dr. Chiappone also noted that plaintiff had problems with alcohol abuse, though he was unable to ascertain the full extent of those issues due to plaintiff's vague and guarded answers during his examination. Dr. Chiappone found that plaintiff's concentration, attention, and memory were

---

[4]The DSM-IV categorizes individuals with scores of 51-60, as having "moderate symptoms any moderate difficulty in social, occupational, or school functioning." *See* DSM-IV at 34.

11

below average. He opined that plaintiff would have some difficulty remembering information over time; difficulty maintaining concentration and attention over time; difficulty dealing with supervisors and co-workers; and difficulty dealing with stress in a work environment. He diagnosed plaintiff with a mood disorder and alcohol abuse, and assigned her a GAF score of 55. (Tr. 773-79).

State agency reviewing psychologist Bruce Goldsmith, Ph.D., reviewed the file in November 2012 and affirmed Dr. Tangeman's assessment, including his finding that the record established that plaintiff had experienced one or two episodes of decompensation. (Tr. 122-23, 126-27). Dr. Goldsmith added: "On recon[sideration], [plaintiff]'s level of motivation waxed and waned, presentation on [Mental Status Examination] in regards to intellect/cognition is inconsistent [with] collaborative evidence." (Tr. 127).

Listing 12.04 governs affective disorders, such as bipolar disorders. The required level of severity for this Listing is met when both the "paragraph A" and "paragraph B" criteria of the Listing is satisfied, or when the criteria of "paragraph C" are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. To satisfy the "paragraph B" criteria of Listing 12.04, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. *Id*., § 12.00 (C). Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. *Id*., § 12.00(C)(4).

The ALJ determined that plaintiff's severe mental impairments, bipolar disorder and alcohol dependence, considered singly and in combination, do not meet or medically equal the

criteria of Listing 12.04(B) because they do not cause at least two "marked" limitations. (Tr. 18-19). The ALJ found that plaintiff has mild restriction in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence, or pace. (*Id*.). The ALJ further determined: "As for episodes of decompensation, the record does not indicate that [plaintiff] has experienced any episodes of decompensation, which have been of extended duration. Because [plaintiff]'s mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria [of Listing 12.04] are not satisfied." (Tr. 19).

The ALJ's conclusion that there is no record evidence establishing that plaintiff has experienced episodes of decompensation is without substantial support. Both reviewing psychologists and plaintiff's treating psychiatrist found that plaintiff experienced multiple episodes of decompensation of indeterminate length. (Tr. 86, 122, 745-46). There is no contrary medical opinion of record which supports the ALJ's conclusion that plaintiff did not suffer from episodes of decompensation of an extended duration. The Court cannot discern whether the ALJ ignored, rejected, or merely overlooked the opinion evidence of record that directly contradicts her determination and cannot therefore meaningfully review the ALJ's decision. *See Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiler*, 732 F.2d 75, 78 (7th Cir. 1984)) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.").

The ALJ's failure to reconcile her determination regarding plaintiff's episodes of decompensation with the medical opinion evidence of record warrants reversal for several reasons. First, as stated above, the Court cannot meaningfully review the ALJ's decision absent some

13

explanation as to how the medical opinions of record finding that plaintiff suffered multiple

episodes of decompensation support her conclusion that "the record does not indicate . . . any

episodes of decompensation. . . ."  (Tr. 19).   Second, the ALJ's decision regarding the record

evidence of episodes of decompensation does not comport with Social Security regulations.

Listing 12.00(c)(4) explains that when a claimant presents evidence of decompensation episodes

which do not specifically meet the criteria of Listing 12.04, the ALJ "must use judgment to

determine if the duration and functional effects of the episodes are of equal severity and may be

used to substitute for the listed finding in a determination of equivalence."   20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 12.00(c)(4).   The ALJ did not make any determinations as to the duration and

functional effects of plaintiff's documented episodes of decompensation as required by the

regulation.   "An ALJ's failure to follow agency rules and regulations 'denotes a lack of

substantial evidence . . . .'"   *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Blakley*, 581

F.3d at 407).   Third, the ALJ's unsupported finding that plaintiff suffered no episodes of

decompensation calls into question the ALJ's RFC formulation.   As the regulation cited above

recognizes, plaintiff's documented episodes of decompensation may effect her ability to function

in a work setting.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(c)(4).   Dr. Wee, plaintiff's

treating psychiatrist, opined that plaintiff had three or more episodes of decompensation of

extended duration within the last year and that plaintiff was likely to miss four or more days of

work each month due to her impairments.   By failing to acknowledge that plaintiff in fact

experienced multiple episodes of decompensation – which supports the treating psychiatrist's

opinion on work absences – the ALJ failed to consider relevant evidence in assessing plaintiff's

RFC.   Remand for consideration of this evidence is therefore warranted.

To the extent that the Commissioner attempts to clarify the ALJ's conclusion by arguing

14

that plaintiff's documented decompensation episodes do not meet the criteria of Listing 12.04

because they were not "repeated" as defined by the Social Security regulations, *see* Doc. 18 at 2-3,

this argument is not well-taken.   The Court may not accept the Commissioner's *post hoc*

rationalization for the ALJ's misstatement of the record evidence.   If the ALJ's decision is to be

upheld, it must be based on reasons articulated by the ALJ in her decision.   *See Keeton v. Comm'r*

*of Soc. Sec.*, __F. App'x__, 2014 WL 5151626, at *7 (6th Cir. Oct. 14, 2014) (citing *Hyatt Corp. v.*

*N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)).

 For the reasons stated above, plaintiff's first assignment of error should be sustained.

 2. <u>Whether the ALJ erred in assessing the effects of plaintiff's alcohol abuse</u>.

 For her second assignment of error, plaintiff asserts the ALJ improperly considered

plaintiff's alcohol abuse by: (1) failing to consider whether plaintiff met or medically equaled

Listing 12.09; (2) failing to adhere to Social Security regulations in determining the effects of

alcohol abuse on plaintiff's functional abilities; and (3) concluding that alcohol abuse was

responsible for plaintiff's episodes of suicidal ideation.   (Doc. 11 at 9-14).   In response, the

Commissioner argues that the ALJ properly analyzed the effects of plaintiff's alcohol abuse as

required by the regulations because she considered it to be a severe impairment, assessed its effect

on plaintiff's functioning, and then determined that plaintiff retained the ability to perform a

significant number of jobs in the national economy.   (Doc. 18 at 4-6).   The Court finds that the

ALJ's analysis of plaintiff's severe alcohol abuse impairment does not comport with the applicable

Social Security regulations and, accordingly, remand is appropriate.

 The Social Security Act provides that "an individual shall not be considered to be disabled

. . . if alcoholism or drug addiction would . . . be a contributing factor material to the

Commissioner's determination that the individual is disabled."   42 U.S.C. § 1382c(a)(3)(J).

The implementing regulations specify the sequential evaluation process the ALJ must follow when the issue of substance abuse presents itself.   This process requires the ALJ to *first* determine whether a claimant suffers from a disability before proceeding - if necessary - to a determination of whether the substance abuse is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535, 416.935.[3]

The ALJ did not conduct the proper analysis in considering the impact of plaintiff's alcohol abuse on the disability determination.   Notably, the ALJ's decision fails to even mention the controlling regulations, 20 C.F.R. §§ 404.1535, 416.935, that set out the procedure to follow.   *See Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003) (the ALJ's failure to cite the operative substance abuse regulation "anywhere in his decision was not a mere drafting oversight, but accurately reflected his failure to follow the procedures prescribed there.   The Commissioner

---

[3]Title 20 C.F.R. §§ 404.1535, 416.935 sets forth the process for determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability:

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

16

has duly promulgated regulations in this area, which the ALJ may not silently disregard."). The ALJ improperly conflated the sequential analysis by discounting the effects of plaintiff's alcohol abuse issues *prior* to making a determination of disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). Specifically, it appears the ALJ improperly deducted the assumed effects of plaintiff's alcohol abuse at Step Three and Step Four of the sequential analysis by concluding that plaintiff's alcohol abuse was the cause of her decompensations. The ALJ found that "all [of plaintiff's] suicide ideation stems from alcohol abuse. . . ." (Tr. 23). The ALJ supports this sweeping conclusion by citing to an April 21, 2009 progress note from plaintiff's primary care physician which includes notations that plaintiff attempted suicide by overdosing on pills following a fight with her boyfriend while she was drinking. *See* Tr. 506. The ALJ therefore appears to have improperly rejected plaintiff's episodes of decompensation, *i.e.*, suicide attempts, because she attributed them to plaintiff's alcohol abuse and not to her underlying mental impairment.

In addition to failing to evaluate plaintiff's alcohol abuse issues in accordance with the Social Security regulations, ALJ Motta did not cite substantial evidence to support her determination on the impact of plaintiff's substance abuse on the disability determination. The ALJ found that plaintiff's alcohol abuse negatively impacts her functioning, noting that plaintiff's mental status exams were relatively normal when she was not drinking. (Tr. 23). However, the ALJ did not cite to any evidence that plaintiff's conversely poor performance or presentation on mental status exams was the result of alcohol abuse as differentiated from bipolar disorder. The ALJ also found that "[s]ince [plaintiff] worked seemingly while having some alcohol issues before the alleged onset date, there is no evidence that this condition would substantially impair her ability to work." (*Id.*). The ALJ's conclusion that plaintiff "seemingly" had alcohol abuse issues prior to the alleged onset date which did not preclude her ability to work is unsupported by any

evidence of record and, further, is entirely speculative.   There is simply nothing in the record to support this conclusion.

Thus, the ALJ erred in her evaluation of plaintiff's substance abuse issues in contravention of the Social Security regulations.   The ALJ determined that plaintiff's alcohol dependence is a severe impairment.   (Tr. 16).   The ALJ then improperly evaluated plaintiff's alcohol abuse disorder in connection with Step Three and Step Four of the sequential evaluation process instead of first making a disability determination without factoring out the assumed effects of her substance abuse.   (Tr. 19-25).

In an analogous case within the Sixth Circuit, one district court explained the rationale for reversing and remanding based upon a similar error:

> To find that drug addiction is a contributing factor material to the determination of disability without first finding the claimant disabled, as the ALJ did here, is to put the cart before the horse. . . .   The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C).[4]

*Williams v. Barnhart*, 338 F. Supp.2d 849, 862 (M.D. Tenn. 2004) (finding legal error where the ALJ improperly considered claimant's cocaine addiction as detracting from the credibility of her complaints of seizure activity and other symptoms).   *See also Brueggemann*, 348 F.3d at 693-95; *Drapeau v. Massanari*, 255 F.3d 1211, 1214-15 (10th Cir. 2001).   As the Eighth Circuit in *Brueggemann* explained in analyzing cases involving drug or alcohol abuse:

> The ALJ must base this disability determination on substantial evidence of [the claimant's] medical limitations without deductions for the assumed effects of substance use disorders.   The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. Substance use disorders are simply not among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability. . . .

---

[4]Section 423(d)(2)(C) is the analogous provision under the DIB provision of the Social Security Act relating to whether drug or alcohol abuse is a contributing factor material to the determination of disability.

18

> If the gross total of a claimant's limitations, *including* the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent.

348 F.3d at 694-95 (emphasis added).   In other words:

> Only after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability.   If this process proves indeterminate, an award of benefits must follow. The alternative procedure adopted by the ALJ in this case remains inconsistent with the regulations binding on claimants, the ALJs, and this court.   The ALJ's decision reflects legal error.

*Id.* at 695.

Because the ALJ failed to follow the controlling regulations, the Court is unable to discern from the instant record the degree to which plaintiff's functional abilities are adversely affected by her bipolar disorder, as opposed to any alcohol abuse.   The Court cannot conclude that any legal error committed by the ALJ was harmless.   For these reasons, plaintiff's second assignment of error should be sustained.

3.   <u>Whether the ALJ erred in weighing the medical opinions of record</u>.

For her third and final assignment of error, plaintiff argues the ALJ's decision must be remanded because the ALJ failed to explain what weight was provided to the opinions of the state agency reviewing psychologists.   Plaintiff also maintains that remand is necessary because: (1) the ALJ did not give good reasons for discounting the opinions of Dr. Wee, her treating psychiatrist, and (2) the ALJ did not address Dr. Wee's August 2012 opinion.   (Doc. 11 at 14-21). For the reasons that follow, the undersigned finds that the ALJ erred in weighing the medical opinion evidence of record.

19

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). This evidence may include "medical opinions, which 'are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do despite his or her impairments." *Id.* (citing 20 C.F.R. 404.1527(a)(2)).

The applicable regulations lay out the three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source. 20 CFR §§ 404.1502, 416.902. When treating sources offer opinions, the Social Security Administration is to give such opinions the most weight and is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). This requirement only applies to treating sources. *Id.* at 876. "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted).

First, the ALJ erred by not explaining how she weighed the opinions of the non-examining state agency psychologists. While the ALJ discussed the opinions put forth by Dr. Tangeman and

Dr. Goldsmith, she failed to articulate what weight she was affording these opinions and why. The ALJ was required to evaluate these opinions and "explain in the decision the weight given to the opinions of" the state agency psychologists "as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration.]"  *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).  The ALJ's failure to explain her evaluation of this opinion evidence is a violation of her duty and leaves the Court unable to meaningfully review her decision on this basis.

Second, even if the Court were to find, as the Commissioner argues, that the ALJ implicitly adopted the findings of the state agency reviewing psychologists, *see* Doc. 18 at 6, remand would nevertheless be required because the ALJ's RFC formulation lacks substantial support.   The Commissioner contends that the ALJ adopted the limitations put forth by Drs. Tangeman and Goldsmith but review of the record reveals that the ALJ generated her own RFC unsupported by any medical opinion.   Both state agency reviewing psychologists opined that plaintiff had moderate restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation of an extended duration.   (Tr. 86, 122).   In contrast, the ALJ determined that plaintiff had only mild restrictions in activities of daily living and no episodes of decompensation without explaining why she did not accept the medical opinions of the state agency psychologists.   (Tr. 18-19).   The ALJ appears to have impermissibly substituted her own opinion in lieu of the medical opinions of record in assessing plaintiff's RFC.   *See Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011).   *See also Clifford v. Apfel*, 227 F.2d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.");

21

*Rosa v. Callahan*, 168 F.3d 72, 78–79 (2nd Cir. 1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion.").   Here, the ALJ's findings that plaintiff suffers from mild restriction in activities of daily living and has experienced no episodes of decompensation are inconsistent with the medical opinion evidence of record and therefore lack substantial support.

Third, the ALJ erred by failing to consider the August 2012 mental functional capacity assessment completed by treating psychiatrist Dr. Wee.   The Commissioner argues that the ALJ's oversight is harmless error because the ALJ indirectly addressed Dr. Wee's conclusions in other parts of her decision.   *See* Doc. 18 at 9.   For example, the Commissioner contends that because the ALJ discussed the consultative examiner's finding that plaintiff had poor insight, there was no error in the ALJ's failure to discuss Dr. Wee's similar observations.   *Id*.   This argument is without merit.   The ALJ must comply with very specific criteria when weighing the opinions of treating doctors.   *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013). *See also* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).   Because medical opinion evidence from other sources is not subject to the same level of deference as opinions from treating sources, the ALJ may not rest on her conclusions regarding the consultative examiner's opinion when weighing the opinion of plaintiff's treating psychiatrist.   More disconcerting is the ALJ's complete silence on this opinion evidence from plaintiff's treating psychiatrist.   When an ALJ fails to mention relevant evidence in her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."   *Morris v. Sec'y of H.H.S.*, No. 86-5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981)).   The ALJ's decision makes no mention of Dr. Wee's functional capacity assessment, which is inconsistent with the opinions of the state agency psychologists and the RFC formulated

by the ALJ. Accordingly, it appears that the ALJ overlooked, ignored, or rejected this evidence. The ALJ committed an error of law when she failed to comply with her duty to weigh Dr. Wee's opinion in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Blakley*, 581 F.3d at 407. Remand is required to allow the ALJ to fully consider Dr. Wee's opinion. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 750 (6th Cir. 2007).

For these reasons, plaintiff's third assignment of error should be sustained.

**IV. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings with instructions to the ALJ to make new determinations at Steps Three and Four of the sequential evaluation process given the undisputed evidence establishing that plaintiff has suffered episodes of decompensation; re-assess the impact of plaintiff's alcohol dependence consistent with the regulations and this opinion; and weigh all the opinion evidence of record.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 12/1/2014

Karen L. Litkovitz
United States Magistrate Judge

23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TAMMY A. MORRISON,
     Plaintiff,

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:13-cv-722
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).